Cordy, J.
(concurring, with whom Gants, C.J., and Spina, J., join). John Doe is the target of a grand jury investigation. According to evidence gathered in the course of that investigation, Doe’s cellular telephone contains evidence of the criminal activities under investigation. In June, 2013, Doe transferred his cellular telephone to a law firm that was providing him legal advice. After demonstrating that the Commonwealth had probable cause to believe that the cellular telephone contained evidence of the crimes under investigation, the judge below authorized the issuance of a subpoena to the law firm requiring it to produce the cellular telephone before the grand jury.
In objecting to the issuance of the subpoena, neither Doe nor the law firm contends that the cellular telephone contains any communications or other information stored on its memory that might be protected by the attorney-client or any other privilege. Rather, they contend that because the cellular telephone may contain incriminating evidence, compelling Doe to produce it before the grand jury by means of a subpoena would essentially compel a testimonial acknowledgement from him that the cellular telephone was his. Consequently, the law firm argues, having come into possession of the cellular telephone in the course of *417 giving Doe legal advice, it also cannot be compelled by subpoena to produce the cellular telephone before the grand jury. The law firm and Doe further argue that G. L. c. 276, § 1, the statute governing the issuance of search warrants, does not permit the Commonwealth to search for and seize the cellular telephone while it remains in the possession of the law firm, even though it could be obtained from Doe through that mechanism. Thus, they argue, the Commonwealth is effectively precluded from obtaining any of the nonprivileged information on the cellular telephone relevant to the criminal investigation, at least on the record before the judge below.
I agree with the court that Fisher v. United States, 425 U.S. 391, 402 (1976), controls the subpoena question in this case. Where the cellular telephone (cell phone) was turned over to the law firm for the purpose of obtaining legal advice, and Doe himself could not have been compelled to produce the phone in response to a similar subpoena because the act of production would be both testimonial and incriminating, the umbrella of the attorney-client privilege protects it from compelled production. I also agree that the record below is inadequate to make a judgment about the propriety of issuing a search warrant. I write separately, however, to emphasize that placing the cell phone (or any other incriminating documentary evidence) in the hands of an attorney does not sequester it under Massachusetts law from the reach of law enforcement pursuant to G. L. c. 276, § 1, where it is not claimed that the cell phone itself is privileged or contains privileged material, where there is probable cause to believe that it contains evidence of crimes under investigation by the grand jury, and where it is no longer being retained for the purpose of rendering legal advice. To interpret G. L. c. 276, § 1, otherwise would stand completely at odds with clear legislative intent.
General Laws c. 276, § 1, was amended by c. 691 of the Acts of 1986 to provide special protections for documentary evidence in the possession of lawyers, psychotherapists, and clergymen, from the intrusions that might be caused by the execution of search warrants, except in circumstances where the failure to issue such a warrant might result in the evidence being unavailable through secretion, destruction, or loss.[1] The 1986 amendment identified these professionals and provided unique protec- *418 tians for documents in their files precisely because the law provides special privileges to the consultations they have with their clients, patients, or parishioners. The Legislature recognized that a search of their files for nonprivileged documents (pursuant to a search warrant) would pose a significant risk that the privileges of innocent third parties would be compromised. See, e.g., 1986 House Doc. No. 6574 (letter from then Governor Michael S. Dukakis, dated December 24, 1986, explaining purpose of amendment is to protect confidential relationship of covered professionals and their clients); Letter from Karen Hudner, Legislative Agent, Civil Liberties Union of Massachusetts, to then Governor Michael S. Dukakis (Dec. 9, 1986) (Hudner letter) (arguing amendment would protect privacy of third persons in confidential relationships with covered professionals); Memorandum from Patricia A. Boies, Deputy Chief Counsel, Office of Legal Counsel, to then Governor Michael S. Dukakis (Dec. 18, 1986) (Boies memorandum) (highlighting proponents’ concern that police, while executing a search warrant, look through privileged and unprivileged documents that are both related and unrelated to subject of search).
As repeatedly articulated by the proponents of the legislation, over the many years it was under consideration by the Legislature, the legislation was intended “to protect innocent third parties in a confidential legal or medical relationship . . . [and] would affirm that in Massachusetts ... the privacy of innocent people is protected against unnecessary intrusion.” Hudner letter, supra. The proponents also proclaimed that the amendment would not impede the legitimate interests of law enforcement because “their right to subpoena the very same material would still be available to them.” Letter from James T. Hilliard, Counsel, Massachusetts Psychiatric Society, to then Governor Michael S. Dukakis (Dec. 16, 1986). In other words, there would be “no harm from this [amendment], which would merely shift [the gathering of evidence] to the usage of a subpoena duces tecum,” a more surgical instrument, thereby “permitting] orderly litigation of the issue of privilege.” Letter from Arnold R. Rosenfeld, Chief Counsel, Committee for Public Counsel Services, to then Governor Michael S. Dukakis (Dec. 10, 1986). See Letter from Nathan A. Talbot, Committee on Publication for Massachusetts, The First *419 Church of Christ, Scientist, to then Governor Michael S. Dukakis (undated) (stating amendment would not hinder investigations). Indeed, in proposing amended language that narrowed the breadth of the amendment and ultimately became the statutory language, the Governor urged the General Court to adopt his language because it would accomplish the purpose of protecting privileged relationships without having “the unintended effect of resulting in the loss of evidence not protected by any privilege.” 1986 House Doc. No. 6574. There is, however, nothing in the extensive legislative history leading to the adoption of the amendment to suggest that the Legislature (or the proponents) considered the circumstances of the present case — where a subpoena is not available as an alternative to the Commonwealth for reasons unrelated to the privileged nature of the documents themselves.
To interpret the 1986 amendment to bar the seizure upon warrant of unprivileged evidence of a crime, where the evidence cannot be obtained by subpoena only because of the incriminating nature of the act of compelled production, runs counter to (not in accord with) the purposes of its enactment as articulated by the Governor and its proponents. See, e.g., Boies memorandum, supra (explaining opportunity to litigate privilege issue before seizure was crucial to proponents). Simply put, the amended law was never intended to permanently shield from seizure unprivileged evidence of criminal activity placed in the hands of an attorney by a client under investigation, or to create a depository for the secretion or sequestration of such evidence from law enforcement. See, e.g., 1986 House Doc. No. 6574 (proposing language — ultimately accepted — that avoids unintended protection of unprivileged materials). Indeed, the exclusions in the amendment for documents that might become destroyed, lost, or secreted from the Commonwealth is consistent with the Legislature’s intention not to make unprivileged material unavailable to the Commonwealth.
In light of the extensive legislative history at the court’s disposal laying out the contrary intentions of all parties to the legislative process, the court’s responsibility is to interpret the statute in accord with those intentions if at all possible. Commonwealth v. Parent, 465 Mass. 395, 409 (2013), quoting Commonwealth v. Rahim, 441 Mass. 273, 278 (2004) (“[court] need not adhere strictly to the statutory words if to do so would lead to an absurd result or contravene the clear intention of the Legislature”).
*420 I am of the view that both the interests protected by the amendment and the Commonwealth’s interest in securing evidence not intended to be protected by the amendment can be reconciled, and I would not preclude such a reconciliation on an adequate record. I would conclude that in the circumstances where it appears that an item of evidence sought by the Commonwealth cannot be obtained from the law firm by the issuance of a subpoena because of its client’s privilege regarding production, and where, as a consequence, a search warrant would ordinarily be necessary, the warrant application should be presented to a judge, with those circumstances set out in an affidavit. The judge should then issue a short order of notice to the law firm, giving it an opportunity to raise any privilege that might protect the item from seizure. Along with the short order of notice, the judge should issue an order barring the law firm from transferring or destroying the item pending further ruling of the court. In this manner, the unprivileged and relevant evidence is not lost to the Commonwealth, and there is an opportunity prior to a search for privileges to be raised and litigated. If the judge concludes that no privilege applies to the item and that its retention by the law firm is no longer for the purpose of or necessary to the rendering of legal advice, the judge may properly order the warrant to issue.[2]
[3]In such circumstances, the continued retention of the evidence would constitute its concealment within the meaning of the term “secreted” as used in G. L. c. 276, § 1.® The judge may further direct the parties to fashion a protocol unlikely to pose a risk to the privileges of other documents or clients or to result in a production that is testimonial and incriminating. See, e.g., Preventive Med. Assocs., Inc. v. Commonwealth, 465 Mass. 810, 824-825, 828 (2013) (summarizing court’s ordered procedure for privilege review); Commonwealth vs. Ellis, Mass. Super. Ct. Nos. 97-192, 97-562, 98-355, 97-193, 97-561, 97-356, and 97-563, slip op. at 44-45 (Aug. 18, 1999) (outlining procedure used to search law firm records). See also ABA Standards for *421 Criminal Justice § 4-4.6 (Physical Evidence) (3d ed. 1993) (“If defense counsel retains the item [of evidence], he or she should retain it in his or her office in a manner that does not impede the lawful ability of law enforcement authorities to obtain the item”).
Accordingly, while I would reverse the judge’s order authorizing the issuance of a grand jury subpoena, I would not preclude the issuance of a search warrant on a more complete record with regard to the status of the cellular telephone evidence, its utility as evidence of a crime, and whether its continued retention is necessary for the purpose of rendering legal advice.

The amendment also provided that a search warrant for such documentary evidence could be obtained if there was probable cause to believe that the *418 lawyer, psychotherapist, or clergyman in possession of the evidence had committed, was committing, or was about to commit a crime.

The Restatement (Third) of the Law: The Law Governing Lawyers § 119 comment c (2000) (physical evidence of a client crime), provides that although it may be reasonably necessary for purposes of representation to take possession of evidence for the time necessary to examine it, “physical evidence of a client crime in possession of the lawyer may not be retained to a point at which its utility as evidence for the prosecution is significantly impaired.”

“Secrete” is defined in Black’s Law Dictionary 1557 (10th ed. 2014), as “to remove or keep from observation, ... to conceal ... to hinder or prevent officials . . . from finding it.”